# Pennsylvania Special Education Hearing Officer
# Final Decision and Order

**CLOSED HEARING**

**ODR File Number:**

24340-19-20

**Child's Name:**

Dayontae Hoskins

**Date of Birth:**

04/07/2007

**Pro Se Parent:**

Shanicqua Aponte
621 King Street
Pottstown, PA 19464

**Local Education Agency:**

Pottstown School District
230 Beech Street
Pottstown, PA 19464

*Counsel for the LEA*
Shannon Pierce, Esq.
Fox Rothschild
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422

**Hearing Officer:**

James Gerl, CHO

**Date of Decision:**

April 5, 2021

## BACKGROUND

The parent filed a due process complaint alleging that the student's IEP violated IDEA by failing to adequately address the student's problem behaviors and alleging that the school district violated IDEA by failing to properly train the school resource officer at the school attended by the student. The due process complaint also contained allegations that contested the filing of criminal charges against the student by the police department and alleging a Section 1983 constitutional violation involving state-created danger on the part of the school district. Because an IDEA hearing officer does not have jurisdiction over alleged constitutional violations by a school district and because the police department cannot be a proper party to a special education hearing, a partial motion to dismiss those two allegations of the complaint was granted prior to the hearing. The order resolving said motion to dismiss is incorporated by reference herein. I find that the student's IEPs appropriately addressed the student's problem behaviors and that the school district did not deny a free appropriate public education to the student. I find further that the school district did not deny a free appropriate public education to the student by failing to appropriately train the school resource officer.

## PROCEDURAL HISTORY

This hearing was conducted in one virtual session. Although the parties stipulated to only one fact, the hearing was, nonetheless, conducted reasonably efficiently.

Five witnesses testified at the hearing. School district Exhibits S-1 through S-35 and Parent exhibits P-1 through P-9 were admitted into evidence at the hearing. Parent exhibits P-10 through P-16 are videos that

were not properly marked in accordance with the uniform pre-hearing directions. The pro se parent has apparently been unable to correctly mark the exhibits. Despite this deficiency, the exhibits are admitted into evidence because the parent is proceeding without counsel and because one of the videos apparently shows the student being handcuffed. The videos are entitled to little weight otherwise because no witness provided a foundation for the exhibits or explained who or what the videos show. At the request of counsel for the school district, a protective order is issued. Accordingly, parent exhibits P-10 through P-16 are admitted into evidence, but a protective order is entered herein requiring the parties to use the videos only for purposes directly relating to this proceeding. The protective order is granted because at least some of the videos appear to contain images of other students who are not involved in this case.

After the hearing, counsel for the school district and the pro se parent each submitted written closing arguments/post-hearing briefs and proposed findings of fact. All arguments submitted by the parties have been considered. To the extent that the arguments advanced by the parties are in accordance with the findings, conclusions and views stated below, they have been accepted, and to the extent that they are inconsistent therewith, they have been rejected. Certain arguments and proposed findings have been omitted as not relevant or not necessary to a proper determination of the material issues as presented. To the extent that the testimony of various witnesses is not in accordance with the findings as stated below, it is not credited.

Personally identifiable information, including the names of the parties and similar information, has been omitted from the text of the decision that follows. FERPA 20 U.S.C. § 1232(g); and IDEA § 617(c).

## ISSUES PRESENTED

After the ruling on the motion to dismiss in this case, the due process complaint raised the following issues:

1.  <u>Whether the parent has proven that the school district denied a free appropriate public education to the student because the student's IEPs failed to appropriately address the student's problem behaviors</u>?

2.  <u>Whether the parent has proven that the school district denied a free appropriate public education to the student by failing to appropriately train the school resource officer</u>?

## FINDINGS OF FACT

Based upon the evidence in the record compiled at the due process hearing, I make the following findings of fact.[1]

1.  The student was born on April 7, 2007 and is in eighth grade in the school district. The student is eligible for special education under the IDEA categories of emotional disturbance and specific learning disability. (S-5; S-30).

2.  The student reenrolled in the school district on approximately September 11, 2019 and attended seventh grade at a middle school in the

---

[1] (Exhibits shall hereafter be referred to as "P-1," etc. for the parents' exhibits; "S-1," etc. for the school district's exhibits; references to page numbers of the transcript of testimony taken at the hearing is the hereafter designated as "NT___").

district during the 2019 – 2020 school year and eighth grade in the 2020 – 2021 school year. (S-3; S-19; S-30)

3.   An IEP team meeting was convened for the student on September 23, 2019, which resulted in the development of an IEP. (S-4; S-5; S-6)

4.   The parent disagreed with the September 2019 IEP and filed a due process complaint with regard thereto.  At the hearing session on November 19, 2019, the parties resolved all claims.  The parent did not make any objections to the behavioral provisions of the student's IEP, but changes were made to the present levels of performance and the specially designed instruction contained in the IEP and the parent approved the changes. (S-8; S-12; NT 177 – 178, 239 – 240, 250)

5.   The IEP that was in place on February 21, 2020 included a full-time one-on-one aide, a positive behavior support plan that was generated as a result of a functional behavioral analysis conducted by a board-certified behavior analyst, a safety and crisis plan, social skills instruction, an emotional support room and numerous specially designed instruction and supports for the student in the area of behavior.  The IEP includes two behavior goals for the student.  The IEP also includes consultation by a board-certified behavior analyst for four hours per week.  (S-5; S-6; NT  239 - 240, 285)

6.   The student made progress with respect to the student's problem behaviors and did not demonstrate any instance of physical aggression during the 2019 – 2020 school year before the February 21, 2020 incident.  (S-19; NT 240 – 241, 250)

7. On approximately August 7, 2018, the school resource officer who was on duty during the February 21, 2020 incident was assigned to the school district by the police department. (S-1; NT 59 – 60)

8. On approximately August 15, 2019, the school district and the local police department renewed a memorandum of understanding providing for the assignment of a school resource officer to the school district. The memorandum requires that the police department be responsible for all training, including the required school resource officer training. (S-2; NT 276)

9. At all relevant times, the school resource officer was an employee of the police department and not an employee of the school district. (P-9; S-1; NT 30 – 31, 39, 90 – 91, 109, 274 - 276)

10. The school resource officer who was on duty on February 21, 2020 was a municipal police officer and was a nationally certified school resource officer by the National Association of School Resource Officers, which required forty hours of classroom training. (S-1; NT 76 – 77, 105 – 109, 274-276)

11. The school district invited the school resource officer to attend the district's crisis prevention and intervention training twice, but the school resource officer was not able to attend the training. (NT 117, 254 – 255; 275-276)

12. On the morning of February 21, 2020, the student had a non-physical argument with one of the student's peers. School staff spoke with the student after the incident and determined that the student had been deescalated. (NT 245 – 247, 139 - 140)

13. A few hours later on February 21, 2020, the student left the classroom that the student was scheduled to be in and entered another

classroom searching for the student with whom the student had had the argument earlier in the day. The student walked toward the peer and began trying to punch the peer. As the student was attempting to punch the peer, the student hit the student's one-on-one aide in the face with an elbow. (S-19; NT 66 – 70, 139 – 141, 215 – 220)

14. When the fight began, a teacher made an urgent radio call request for assistance. The school resource officer, as well as school administrators, responded to the request for assistance. (NT 64 – 67, 139 – 140, 215 – 221)

15. The student left the classroom where the physical altercation had taken place and began walking through the hallways with school staff, but then attempted to return to the classroom where the fight had occurred. (NT 94 – 95, 114, 135 – 142, 215 – 220)

16. When the student returned to the hallway en route to the classroom where the fight had occurred, the student was asked by school district staff to stop walking toward the classroom where the other student had remained. The student did not stop walking toward the classroom and continued in an aggressive manner. The school resource officer ran up the hallway from behind the school staff and placed the student in handcuffs. (P-12; P-4; NT 64 – 77, 94 – 97, 134 – 136, 139 – 143; 145 – 147)

17. After handcuffing the student, the school resource officer took the student into custody and transported the student to the police department. (P-4; NT 71 – 73, 84 – 90, 232)

18. School district staff did not ask or instruct the school resource officer to physically intervene or place handcuffs on the student. School district staff did not ask or instruct the school resource officer or anyone else

in the police department to pursue criminal charges against the student. (P-4; NT 50, 86 – 87, 175, 220 – 223, 253)

19. The student's one-on-one aide believed that the student had inadvertently and unintentionally hit the aide in the face with an elbow. The aide did not want criminal charges filed against the student. (NT 102 – 103)

20. On February 25, 2020, the student's IEP team convened at the request of the student's mother. At the meeting, the IEP team addressed the February 21st incident and adopted additional behavior supports, social skills supports and services to encourage additional behavioral progress. The student's science class was replaced by resource time with a special education teacher. The student's mother agreed with the changes to the IEP. (S-19; NT 187 – 190, 200 – 207, 240 – 252, 286 - 288)

21. The school district gave the student a one-to-three day suspension as a result of the incident on February 21, 2020. (S-17)

22. On approximately March 13, 2020, the school district was closed in response to the COVID-19 pandemic and virtual learning was provided during the closure. (S-21; NT 174 – 175)

23. The school district discontinued the school resource officer program after the COVID closures. (NT 256 – 257)

24. In the summer of 2020, the parent received notice that criminal charges had been filed against the student as a result of the February 21, 2020 incident. (P-4; P-5; NT 175)

25. The parent mistakenly believed that the school district staff had directed the school resource officer to file criminal charges against the student. (P-5; P-7; NT 221-222)

26. The student returned for in-person instruction in the fall of 2020 and the student has not exhibited any serious problem behaviors since then. (S-31; NT 257 – 258)

27. On August 10, 2020, the Bureau of Special Education, in response to a state complaint filed by the student's mother, concluded that the school district had properly and appropriately implemented the student's individualized education program but that the school district had not properly documented the training of the school resource officer. (P-2)

28. On December 2, 2020, the Bureau of Special Education, in response to another state complaint filed by the student's mother, concluded that three allegations of failure to implement the student's IEP had no merit, but found that an allegation that the incident report filed by the school resource officer incorrectly failed to identify that the student was a student with an IEP. (P-1)

29. On December 28, 2020, the Bureau of Special Education notified the student's mother that it would defer further investigation of a request by the student's mother to reconsider the December 2, 2020 ruling on the parent's state complaint because of the instant due process hearing. (P-3)

30. On approximately January 21, 2021, the school district agreed to fund an independent educational evaluation of the student.  After the student's mother agreed to an independent evaluator frequently used by parents, the student's mother changed her mind and decided not to accept the independent educational evaluation of the student. (S-32; NT 258 – 260)

## **CONCLUSIONS OF LAW**

Based upon the arguments of the parties, all of the evidence in the record, as well as my own independent legal research, I make the following conclusions of law:

1. The U.S. Supreme Court has developed a two-part test for determining whether a school district has provided a free appropriate public education (hereafter sometimes referred to as "FAPE") to a student with a disability. There must be: (1) a determination as to whether a school district has complied with the procedural safeguards as set forth in IDEA, and (2) an analysis of whether the individualized education program (hereafter sometimes referred to as "IEP") is reasonably calculated to enable the child to make appropriate progress in light of the child's circumstances. Endrew F by Joseph F v. Douglass County School District RE-1, 580 U.S. ___, 137 S. Ct. 988, 69 IDELR 174 (2017); Board of Educ., etc. v. Rowley, 458 U.S. 178, 553 IDELR 656 (1982); KD by Theresa Dunn and Jonathan Dunn v. Downingtown Area School District, 904 F. 3d 248, 72 IDELR 261 (3d Cir. 2018).

2. In order to provide FAPE, an IEP must be reasonable, not ideal. KD by Dunn v. Downingtown Area School District, supra.

3. The appropriateness of an IEP in terms of whether it has provided a FAPE must be determined at the time that it was made. The law does not require a school district to maximize the potential of a student with a disability or to provide the best possible education; it requires an education program that provides the basic floor of educational opportunity. Ridley School District v. MR and JR ex rel. ER, 680 F. 3d 260, 58 IDELR 281 (3d Cir. 2012); DS v. Bayonne Board of Education, 602 F. 3d 553, 54 IDELR

141 (3d Cir. 2010); <u>Mary Courtney T. v. School District of Philadelphia,</u> 575 F. 3d 235, 52 IDELR 211 (3d Cir. 2009).

4. For a procedural violation to be actionable under IDEA, the parent must show that the violation results in a loss of educational opportunity for the student, seriously deprives the parents of their participation rights, or causes a deprivation of educational benefit. <u>Ridley School District v. MR and JR ex rel. ER</u>, <u>supra</u>; IDEA 615(f)(3)(E); 34 C.F.R. § 300.513(a).

5. Where a student with a disability has behaviors that impede the student's learning or the learning of others, the student's IEP team must consider the use of positive behavioral interventions and supports and other strategies to address those behaviors. IDEA § 614(d)(3)(B)(i); 34 C.F.R. § 300.324(a)(2)(i); <u>Sean C by Helen C v. Oxford Area Sch. Dist.</u>, 70 IDELR 146 (E.D. Penna. 2017); See, <u>Lathrop R-II Sch. Dist. v. Gray ex rel. DG</u>, 611 F. 3d 419, 54 IDELR 276 (8th Cir. 2010).

6. The IEPs developed by the school district for the student were reasonably calculated to confer educational benefit appropriate in light of the student's unique individual circumstances.

7. The school resource officer on duty on February 21, 2020 was properly trained as a school resource officer.

8. The school district has not denied a free appropriate public education to the student.

## **DISCUSSION**

### **1. Whether the parent has proven that the school district denied a free appropriate public education to the**

## student because the student's IEPs failed to appropriately address the student's problem behaviors?

The parent contends that the student's IEP did not appropriately address problem behaviors. The school district argues that the student's IEPs did appropriately address the student's behaviors.

The parent's post-hearing brief does not provide any argument concerning this issue. Instead, the parent's post-hearing brief attacks the filing of criminal charges by the police and raises an argument concerning whether the student's IEP was properly implemented by the school district. The parent had not previously raised the issue of IEP implementation in this proceeding. A parent may not raise a new issue for the first time in a brief filed after the hearing. 34 C.F.R. § 300.511(d). Accordingly, the IEP implementation issue is not properly before the hearing officer and is not considered herein. By not addressing the behavior issue, the parent has waived this issue, and it is concluded that the parent has not proven that the school district denied FAPE to the student by failing to appropriately address behaviors in the student's IEPs.

Moreover, even assuming, *arguendo*, that the parent did not waive this issue, it is clear from the record evidence that the student's IEPs appropriately addressed the student's behaviors. There is no evidence in the record linking the student's IEP, or anything lacking from the student's IEP, to the February 21, 2020 incident. The IEP that was in place on the date of the incident provided the student with a full-time one-on-one aide and a positive behavior support plan that was the result of a functional behavioral analysis. The IEP provided social skills instruction, and an emotional support room, as well as specially designed instruction providing supports for the student in the area of behavior. Importantly, the IEP also included two

[11]

behavior goals for the student. Shortly after the incident on February 21, 2020, the student's IEP team was reconvened, and the student's IEP was changed to offer additional behavior supports and social skills support. The record evidence reveals further that the student made substantial behavioral progress before the incident and after the incident.

A fair reading of the evidence in the record reveals that the IEPs developed for the student appropriately addressed the student's behaviors and were reasonably calculated to provide appropriate benefit in view of the student's unique individual circumstances.

To the extent that the testimony of school district staff was inconsistent with the testimony of the parent, the testimony of school district staff is more credible and persuasive than the testimony of the parent with regard to this issue because of the demeanor of the witnesses, as well as the following factors: the testimony of the student's mother was impaired by an extremely evasive demeanor and tone during cross-examination. In addition, the student's mother provided inconsistent testimony concerning whether the student's mother knew that the student had been charged with aggravated assault for the incident on February 21, 2020.

It is concluded that the parent has not proven that the school district denied a free appropriate public education to the student because of the behavior provisions of the student's IEP.

**2.   Whether the parent has proven that the school district denied a free appropriate public education to the student by failing to appropriately train the school resource officer?**

The parent contends that the school district denied a free appropriate public education to the student by failing to properly train the school resource officer that was assigned to the student's school. The school district contends that the school resource officer was property trained by the police department and that the training of the resource officer did not affect the student's receipt of a free appropriate public education.

The record evidence does not support the parent's contention. The school resource officer was properly trained. The school resource officer was a nationally certified school resource officer; he had completed the required forty classroom-hour school resource officer training.

The parent's brief focuses upon the district's crisis prevention intervention training that the school district twice offered to the school resource officer but that the officer was unable to take. The parent cites no authority to support this argument, and there is no evidence in the record that the district's crisis prevention intervention training was required for school resource officers. More importantly, the police department, and not the school district, had the responsibility for training of the school resource officer according to their memorandum of understanding.

Moreover, there is no evidence in the record tying the alleged lack of training of the school resource officer to any adverse effect upon the student's education. There was no substantive or procedural violation concerning the training of the school resource officer. Even assuming, *arguendo*, however, that there had been a procedural violation with regard to the training of the school resource officer, it is clear that any such violation is harmless. There is no connection between the training of the school resource officer with any adverse effect upon the student's education.

[13]

The parent points to a report by the Bureau of Special Education, in response to one of the state complaints filed by the student's mother, that rejected the allegation that the school district had not implemented the student's IEP, but found that the school district was out of compliance concerning documentation of the training for the school resource officer. The finding by the Bureau of Special Education pertains only to documentation of the training and not to the question of whether the school resource officer had in fact received the training. This evidence concerning failure to document does not support the parent's contention that the school resource officer was not properly trained or that the student was denied FAPE. The parent's argument is rejected.

One additional point raised by the parent's post-hearing brief requires further discussion. The parent asserts that the hearing was not fair and that the due process proceeding was one-sided in favor of the school district. In particular, the parent's post-hearing brief asserts that the parent was not allowed to call certain witnesses. The parent's claim is not accurate. Prior to the hearing, the parent requested a subpoena for the school resource officer. The request was granted, and the school resource officer testified during the due process hearing. The hearing officer also asked the pro se parent whether the parent intended to call any additional witnesses or to offer any other documentary evidence before the hearing record was closed. The hearing officer granted the parent's request for a recess before deciding whether or not the parent had any additional evidence. After the recess, the parent asked some questions and then the parent stated unequivocally that the parent had no more evidence. Only then was the evidentiary record closed. (NT 308 – 319) The parent was clearly afforded the opportunity to present any admissible evidence, including the testimony of witnesses.

[14]

An IDEA hearing officer enjoys a presumption of freedom from bias that may be overcome only by a showing of actual bias.  See, <u>LC and KC on behalf of NC v. Utah State Board of Education, et al.</u>, 43 IDELR 29 (10th Cir. 2005); <u>Dell ex rel Dell v. Township High School District 113</u>, 32 F. 3d 1053, 21 IDELR 563 (7th Cir. 1994); <u>Roland M v. Concord School Comm</u>, 910 F. 2d 983, 16 IDELR 1129 (1st Cir. 1990).  In the instant case, the parent has failed to overcome the well-settled presumption that a hearing officer is free from bias.  There has been no showing of bias.  The allegation is rejected.

To the extent that the testimony of school district staff was inconsistent with the testimony of the parent, the testimony of school district staff is more credible and persuasive than the testimony of the parent with regard to this issue for the reasons stated in more detail in the discussion of the previous issue.

Although it does not affect the result of this special education case, it is nonetheless important to note that the concern of the parent about the handcuffing and filing of serious felony charges against the student is certainly understandable. The school resource officer clearly overacted by handcuffing a student with a disability and later charging the student with aggravated assault. The student did disregard the instructions of school staff ordering the student to stop walking back to the fight after the student's attempt to punch another student had accidentally resulted in an elbow to the nose of the student's one-on-one aide. The student's behavior was clearly wrong, but the use of handcuffs and the charges of aggravated assault are obviously extreme. See, <u>Wilson ex rel. SW v. City of South Lake</u>, 936 F. 3d 326, 119 L.R.P. 33258 (5th Cir. 2009).  However, the parent has not shown that the training of the school resource officer was deficient or that the training of the school resource officer adversely impacted the

student's education. It cannot be presumed that the overreaction by the school resource officer was caused by a deficiency in training without some evidence that the training was in fact deficient.  Moreover, the record evidence shows that the school district did not recommend or request that the student be handcuffed or charged with a crime. More importantly, it was the responsibility of the police department to train the school resource officer. The extreme overreaction by the school resource officer was not caused by the school district, and it is not a violation of the special education laws.

The student's IEP was reasonably calculated to confer educational benefit that was appropriate in view of the student's unique circumstances. There is no actionable procedural violation. It is concluded that the parent has failed to prove that the school district denied a free appropriate public education to the student because of the training of the school resource officer.

## **ORDER**

Based upon the foregoing, it is HEREBY ORDERED that all relief requested in the due process complaint is hereby denied.  The complaint is dismissed.

**IT IS SO ORDERED.**

ENTERED:  April 5, 2021

*James Gerl*

James Gerl, CHO
Hearing Officer